OPINION OF THE COURT
Joseph J. Sedita, J.
The court finds itself in the position of having to choose where to place the burden of loss as between two apparently innocent parties. The basic facts of this case are essentially not in dispute. Only the application of the law to those facts is in serious question. Both parties have moved for summary judgment. To the best of this court’s knowledge, this is a case of the first impression in New York State.
On May 26, 1981, the plaintiff, Sheridan Suzuki, Inc. (hereinafter Suzuki) “sold” a motorcycle to one Ronald Bouton. Incident to this sale they gave him possession of the motorcycle, a signed bill of sale marked paid in full and registration of the vehicle in said Bouton’s name. Additionally, they filed an application for an original certificate of title (pursuant to requirements of article 46 of the New York State Vehicle and Traffic Law). Said certificate was *824 never received by Bouton. Its processing in Albany was interrupted when they were notified by Suzuki of subsequent developments. In return for the subject motorcycle, the plaintiff was given Bouton’s check for $3,559.44 in satisfaction of the purchase price. Said check was later dishonored. Bouton has disappeared from the area.
On May 27, 1981 (one day after the initial sale), Bouton offered to sell the vehicle to Caruso Auto Sales, Inc. (hereinafter Caruso). After examining the papers that Bouton had “in hand”, but before Bouton had received the certificate of title from Albany, Caruso “purchased” the motorcycle from Bouton for $2,000. Bouton gave Caruso possession of the motorcycle, signed over the registration and assured Caruso that he would transfer the certificate of title upon receipt of the title documents from the State. Before accepting the transaction, Caruso had called Suzuki and they had confirmed Bouton’s assertion of prior purchase (not yet having notice of the dishonored check). Justice Norman Stiller has granted a preliminary order placing the motorcycle with Suzuki pending a determination of the legal issues raised herein.
To unravel and resolve the controversy presented here, we must examine closely the fabric of law designed to regulate these types of relationships.
At common law, a thief could pass no title whatsoever to stolen goods. (See Johnny Dell, Inc. v New York State Police, 84 Misc 2d 360.)
However, section 2-403 (subd [1], pars [b], [d]) of the Uniform Commercial Code supplanted the common-law rule as to goods received “in exchange for a check which is later dishonored” or “delivery was procured through fraud punishable as larcenous under the criminal law.” This motorcycle was transferred as part of a transaction involving a bad check, rather than as a result of a direct larceny or burglary and therefore it cannot be asserted that any title received by a “bona fide purchaser for value” would be void. The law is clear that a person receiving goods incident to a transaction involving a dishonored check and a fraud receives only voidable title, at best. (See Uniform Commercial Code, § 2-403.) A “bona fide purchaser for *825 value” can receive good title from a person with “voidable” title under the Uniform Commercial Code. (See Atlas Auto Rental Corp. v Weisberg, 54 Misc 2d 168.)
The crucial question at this point becomes the effect of the State Uniform Vehicle Certificate of Title Act (hereinafter UVCTA) on the species of “title” received by Bouton. The courts have an obligation to give effect to all acts of the Legislature and to avoid interpretations which result in a conflict between statutes. Where a general statute and a more particular statute overlap, the courts will usually give greater effect to the more particularized statute. (See Erie County Water Auth. v Kramer, 4 AD2d 545, affd 5 NY2d 954.)
This court takes note of the fact that the Uniform Commercial Code establishes a general rule for commercial transactions. The Uniform Vehicle Certificate of Title Act does not seek to abrogate the Uniform Commercial Code, but merely seeks to add additional requirements for transactions involving this unique area of “goods”, due to unique problems of fraud and theft experienced with motor vehicles. (See Exchange Nat. Bank of Tampa v State of New York and Holtz Buick v State of New York, 88 Misc 2d 444.) Subdivision (c) of section 2113 of the Vehicle and Traffic Law (UVCTA) expressly states in part: “a transfer by an owner is not perfected so as to be valid against third parties generally until the provisions of this section * * * have been complied with”.
Section 2105 of the Vehicle and Traffic Law (UVCTA) sets forth the procedures for making an application for the first certificate of title. This section makes clear that the requirements of this act are more than ministerial record keeping. The commissioner is required to make a “quasi-judicial” determination as to ownership. (See Vehicle and Traffic Law, § 2105, subd [d].)
“Title” under this act is not an automatic result once the bureaucratic process is triggered, but is a result of a determination of the department after examining the documents submitted to it. The process of obtaining title is not complete, and the provisions of this statute are not fully complied with until the department is satisfied that title was in the alleged owner/applicant.
*826 Since the department suspended the issuance of a title certificate due to its knowledge of the fraud perpetrated herein, the voidable “title” received by Bouton was never perfected as required by the statute (Vehicle and Traffic Law, § 2113, subd [c]), and could not be successfully passed to a “bona fide purchaser for value.” The object of this section is clearly to effectuate the intent of the UVCTA, which is to make transfers of improperly obtained motor vehicles more difficult by requiring a “perfected” title before a successful transfer of a vehicle can be made. An interpretation which avoids this requirement would in effect “extract” the “teeth” built into this legislation and circumvent its clear purpose.
If Bouton had obtained a valid certificate of title, his title would have still been voidable, but would have been “perfected” according to the requirements of the law. He could then have successfully passed good title to a “bona fide purchaser for value.” (As for example in White v Pike, 240 Iowa 596, where the perpetrator of the fraud had obtained a certificate of title in addition to the other usual indicia of ownership.)
Since Bouton never had a perfected title, he could not pass good title to Caruso. (See Guy Martin Buick v Colorado Springs Nat. Bank, 184 Col 166; Bank of Jasper v Langford, 459 SW2d 97 [Mo].)
Defendant alleges that Suzuki is equitably estopped from denying Caruso’s title because of Suzuki’s representation that Bouton had properly received ownership of the vehicle in question. Caruso alleges that he relied upon those representations to his detriment. Equitable estoppel, however, does not operate to create rights which are nonexistent. It may only operate to preclude the denial of a right claimed otherwise to have arisen. (See 21 NY Jur, Estoppel, §17; Morrill Realty Corp. v Rayon Holding Corp., 254 NY 268; Reynolds v Gorton, 30 Misc 2d 216; Village of Ossining v Lakin, 5 Misc 2d 1024; Gadzella v Neumaier, 67 Misc 2d 585.)
Since Bouton never received the certificate of title, he never had perfected title as required under New York law to enable him to transfer good title. Caruso therefore never *827 got any legal title or right to the vehicle, and therefore has no claim to assert in seeking equitable estoppel against Suzuki’s claim.
Buyers who purchase from a seller who does not have a certificate of title, do so at their own risk. Caruso took that risk in the hope of making a substantial profit by obtaining a brand new $3,500 motorcycle for $2,000. The risk he took backfired, and this court cannot protect him from his loss. The law is clear and intended to protect society against exactly the type of fraud perpetrated herein. The duty of this court is to enforce the express mandate of that law.
Accordingly, plaintiff’s motion for summary judgment is granted and defendant’s motion for summary judgment is denied.