Titone, J.
(dissenting). In holding that the Police Department of the City of New York has the power under the City Charter to arrest and detain truants, the majority has overlooked the clear and unambiguous intent of the Legislature to limit such a power to those school attendance officials expressly designated in Education Law § 3213. For that reason, I respectfully dissent.
The State Legislature has empowered certain designated persons to enforce the truancy laws. Education Law § 3213 (2) (a) provides that "[a] supervisor of attendance, attendance teacher or attendance officer, as the case may be, may arrest without warrant any minor who is unlawfully absent from attendance upon instruction.” Respondent New York City argues that its police officers may also detain and arrest truants. In support of its position the City relies on section 435 of the New York City Charter, which states that "[t]he police department and force shall have the power and it shall be their duty to * * * enforce and prevent the violation of all laws and ordinances in force in the city”. Under this provision, contends the City, the New York City Police Department has a power that is coextensive with that of the officials designated in the Education Law to enforce the truancy laws. In spite of the statutory scheme for dealing with truancy established by the Legislature, the majority accepts the City’s argument and concludes that Education Law § 3213 (2) (a) does not divest the police of the power to arrest truants.
It is well settled that the New York City Charter has the force of State law (see, NY Const art IX; L 1937, ch 929; L 1936, ch 483; L 1934, ch 867; Municipal Home Rule Law § 1 et seq.; Matter of LaGuardia v Smith, 288 NY 1, 6-7). The provision of the charter relied on by the City, however, is a general one, enacted without regard to the policies embodied in the Education Law. Education Law § 3213, in contrast, is a *465 specific enactment that seeks to effectuate the State’s policy of minimizing truancy. The latter provision was the product of a conscious legislative choice as to which persons were best equipped to deal with children who have difficulty adjusting to school.
The approach of limiting who may enforce the truancy law to certain specialists is very much in keeping with our general attitude and policies regarding the handling of minors. It has long been governmental policy to protect our youth from the harsh, punitive world of the adult justice system (see, e.g., McKeiver v Pennsylvania, 403 US 528, 552-553 [White, J., concurring]). Undoubtedly, the Legislature was well aware of the humiliation and embarrassment that a child would suffer by being "carted off” in a police van for truancy. Thus, embodied in the statutory scheme of the Education Law is the notion that only those individuals uniquely qualified to handle problem children should be empowered to make warrantless arrests of minors suspected of truancy. A supervisor of attendance, for example, is selected on the basis of teaching experience, experience in social service and welfare work, must be licensed as an attendance teacher and must be in good physical health (Education Law § 3213 [1]). Surely, the Legislature did not intend to overturn its specific plan for the enforcement of truancy laws when — in another time and a different context —it adopted a City Charter, which quite naturally included a general grant of authority for the City’s police force (cf., Erie County Water Auth. v Kramer, 5 NY2d 954, affg 4 AD2d 545, 550; Hughes Tool Co. v Fielding, 297 NY 1024, affg 272 App Div 1048, affg 188 Misc 947; East End Trust Co. v Otten, 255 NY 283; Sheridan Suzuki v Caruso Auto Sales, 110 Misc 2d 823, 825). To accept the rationale of the City is to render nugatory the intent of the Legislature as contained in the text of Education Law § 3213. As stated in Erie County Water Auth. v Kramer (supra, at 550), "[u]nless the language means expressly what it says, it means nothing.” To interpret Education Law § 3213 in a manner inconsistent with the express mandate of the Legislature is to render it meaningless.
The crimes that the defendant was convicted of — resisting arrest (Penal Law § 205.30), attempted assault in the second degree (Penal Law §§ 110.00, 120.05 [3]), and obstructing governmental administration — require that the police officer be engaged in a lawful arrest. Inasmuch as I have concluded that the arrest in this case was not lawful, I would reverse.
*466 Judges Simons, Kaye, Alexander, Hancock, Jr., and Bellacosa concur with Chief Judge Wachtler; Judge Titone dissents and votes to reverse in a separate opinion.
Appeal taken as of right dismissed, without costs. Appellant’s motion for leave to appeal granted. Order affirmed, without costs.